# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| NORMAN SPIELBERG, | : | Bankruptcy No. 04-16677DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY:  DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

      Before the Court is the Motion of the United States trustee ("UST") to Dismiss Case Pursuant to 11 U.S.C. § 707 (the "Motion") and the Debtor's opposition thereto.  The facts as recited below are uncontested.  The Debtor did not appear to testify.  Rather his counsel contended that as a matter of law, the relief is unwarranted, and he has filed a brief in support of his position. The UST has elected not to respond.  Having reviewed the submission which failed to supply any decisional law on the precise issue before me and having done my own research, I conclude that the requested relief is unwarranted under the facts of this case but not for the reasons advanced by the Debtor whose conduct is inexcusable.  Rather given the interim distribution made by the Chapter 7 trustee (the "Trustee"), it is in the best interests of creditors to complete the administration of the estate for the reasons set forth below.

**BACKGROUND**

The debtor Norman Spielberg ("Debtor") filed this case seeking relief under Chapter 7 on May 12, 2004.[1] His first meeting of creditors pursuant to § 341 was scheduled for August 31, 2004 and September 27, 2004 was fixed as the last day to object to the Debtor's discharge or the dischargeability of a debt. The August 31, 2004 meeting was held but could not be completed because the Debtor had not surrendered estate property to the Chapter 7 trustee. The adjourned meeting on September 3, 2004 was also continued to September 27, 2004 to allow Debtor to appraise certain property and make a purchase offer or surrender it to the Trustee. That meeting was once again adjourned to October 25, 2004 to allow the Debtor to provide additional information. No extension of time to object to discharge or dischargeability was filed, and no complaint under § 727 or § 523 was filed before the bar date.

The next docket entry reveals that the meeting of creditors was continued to

---

[1] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995). While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (citing Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules). [Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them. Larson v. Gross Bank, 204 B.R. 500, 502 (W.D. Tex. 1996) (statements in schedules). See also In re Musgrove, 187 B.R. 808 (Bankr. N.D. Ga. 1995) (same); In re Leonard, 151 B.R. 639 (Bankr. N.D.N.Y. 1992) (same).]

Notably this case was filed before the effective date of the Bankruptcy Abuse and Consumer Protection Act of 2004 ("BAFCPA") on October 17, 2004.

November 8, 2004 pending an investigation of the Debtor's assets. There is no further docket entry evidencing the completion of the § 341 meeting. The series of motions filed by the Trustee may suggest the reason therefor. On May 5, 2005 the Trustee filed a Motion for Debtor to Turnover Keys and Provide Access to Property Jointly Owned with Sister, Doc. No. 31, and a Motion to Sell Property, Doc. No. 33, both of which were granted over the Debtor's objection by Orders dated June 27, 2005. Doc. Nos. 39 and 40. With the sale of the property, the Trustee was holding approximately $65,000 for distribution.

The Debtor's Schedules reflect a secured claim in the amount of $43,250 held by the Associated Musicians of Greater New York Local 802 (the "Musicians");[2] a priority claim due the IRS in the amount of $53,858 for 1992-1995 taxes and four unsecured claims aggregating $3,775. Doc. No. 11. However, the proofs of claim filed in the case tell a different story. The Musicians have filed a priority claim under § 507 (a)(4) based on a $43,250 judgment for contributions to an employee benefit plan. The IRS's amended claim filed on February 23, 2007 showing assessments made on February 19, 2007 for tax periods ending in 1997, 1999, 2000, 2001, and 2002 seeks priority treatment for $20,824.30 and unsecured treatment for $64,861.75. The returns for the years 1996 and 2003 were still not filed according to the amended proof of claim which is still based on estimated liabilities for those years.[3]

---

[2] The collateral is not described.

[3] Only the 2003 tax return would be the basis of the priority claim. The amended proof of claim is silent as to the 1998 tax period.

-3-

The issue that animates the instant Motion surfaced on March 5, 2006 when the Internal Revenue Service ("IRS") filed a Motion to Compel the Debtor to File Federal Income Tax Returns ("IRS Motion") for the calendar years ending 1996 through 2003 (the "Missing Returns"). While the IRS filed a proof of claim based on estimated liabilities, it averred that absent the filing of the returns, the actual claim could not be fixed. Doc. No. 83. The Trustee joined in the IRS Motion averring that he had funds available for a distribution which were being withheld pending a determination of the IRS claim. Doc. No. 85. On April 3, 2006 I entered an Order compelling the Debtor to file the Missing Returns within 30 days and provide a copy to the Trustee. I did not grant the additional request that I dismiss the case should the Debtor not comply but rather scheduled a status hearing for May 9, 2006 to consider sanctions if necessary. Doc. No. 87. On May 9 I learned that the Debtor had not complied with the Order and the UST would be taking further action. Doc. No. 94.[4]

On August 10, 1999 the Trustee filed a Motion to Approve Interim Distribution ("Distribution Motion") seeking to make payment of the funds in the estate on account of administrative expenses (i.e., Trustee's compensation and professional fees), the Debtor's exemption and priority claims[5] and thereafter requesting dismissal of the case without an

---

[4] Notably the Debtor never gave a reason for his blatant failure to comply with the Court's Orders, and while the Debtor's Memorandum states that he has since filed the returns, there is no evidence to that effect. Indeed the amended proof of claim filed by the IRS suggests partial compliance after the Debtor's Memorandum was filed.

[5] The Distribution Motion asserts that after the Debtor's exemption, Chapter 7 administrative expenses (including the Trustee's commission and priority claims of the IRS and the Musicians),
(continued...)

-4-

order of discharge being granted. While recognizing the problem created by the Debtor's failure to comply with the April 3 Order, the UST nonetheless opposed the Distribution Motion as the Trustee was in effect seeking leave to make a final distribution without following the prescribed procedures for administering and closing an asset case. The UST contended that administration of the case should be completed and the appropriate remedy for the Debtor's conduct was to seek to deny him his discharge under § 727. The Debtor objected to the request that the case be dismissed without granting him a discharge. After a hearing on September 11, 2006 during which all interested parties appeared and were heard, I entered an Order allowing the Trustee to make the distribution in accordance with statutory priorities but refused the dismissal request.

On November 22, 2006, however, the UST, in a change of position, filed the Motion under § 707(a) seeking to have the case dismissed as a bad faith filing. She avers that the Debtor willfully violated this Court's Order by refusing or failing to file the required tax returns, thus impairing the Chapter 7 trustee's ability to perform his investigatory and administrative duties. In response, the Debtor contends that the absence of filed tax returns did not frustrate the Trustee's ability to investigate the case and does not constitute cause for dismissal as the failure to comply with just one order is not sufficiently egregious as to

---

(...continued)
no funds would be available for unsecured creditors. The interim distribution was permitted but no final report has been filed given the pendency of the Dismissal Motion. It appears that the Trustee calculated the interim distribution based on the IRS's initial proof of claim which estimated a priority claim of $71,279. However that priority claim has been reduced in the amendment to $20,824.30 following the Debtor's filing of returns for 2001 and 2003. It appears that the initial distribution was incorrect since the IRS is to share *pari passu* with the Musicians.

constitute bad faith.

**DISCUSSION**

In <u>In re Tamecki</u>, 229 F.3d 205 (3rd Cir. 2000), the Third Circuit Court of Appeals held that § 707(a) allows a bankruptcy court to dismiss a Chapter 7 case for failure to demonstrate good faith in filing. While noting that such grounds should be confined carefully, it stated that courts must decide whether the petitioner had abused the provisions, purpose or spirit of the bankruptcy law. The decision to dismiss is left within the sound discretion of the bankruptcy judge. The Court further instructed that when a debtor's good faith is put in issue, the burden shifts to him to prove his good faith. <u>Id.</u> at 207.

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") which is not applicable to this 2004 case, § 707(a) has been invoked as grounds for dismissal for failure to file tax returns. However, its use has been sustained only when the failure to file the returns is part of a pattern of abuse that evidences bad faith. In <u>In re Houck</u>, 199 B.R. 163 (S.D. Ohio 1996), the Court found that Mr. Houck filed with the intention of avoiding a large single debt for tax liabilities. He had filed three prior cases where the only major debt to be discharged was his tax liabilities. He conducted his business on a cash basis, kept no records and held no personal bank accounts. His failure to file tax returns for ten years was but one indicia of his bad faith filing. In <u>In re Gonzalez</u>, 1995 Bankr. LEXIS 65, 75 A.F.T.R.2d (RIA) 890 (Bankr. Hawaii 1995), the Court dismissed a case as a bad faith filing where the debtor, a tax protestor, had responded to a motion to compel the filing of tax returns by contending that he had no liability for the taxes and that his constitutionally protected right of privacy excused him from producing the information.

-6-

Like Houck, he kept no records. The Court found that the debtor, an attorney, persisted in the "untenable, frivolous and irresponsible" position that he is not required to file tax returns and as such he had no justification for continuing his case which had been filed in bad faith. 1995 LEXIS 65, at *7. On the other hand, in In re Tanquay, 206 B.R. 575 (Bankr. M.D. Fla. 1997), the Court rejected the application of § 707(a) to dismiss the Chapter 7 case for bad faith.[6] The debtor had failed to file his tax returns for calendar years 1993-1996 and was ordered to file tax returns in a prior bankruptcy case and did not do so.[7] The court found that debtor's past conduct was not probative of his intentions in filing this Chapter 7 case and concluded that the IRS, which had filed the motion to dismiss, had a perfected tax lien for 1990-1992 which was not impaired by the Debtor's discharge and it was free to execute since the automatic stay was no longer in place.[8] Notably in all these cases, the debtor's transgressions extended past the failure to file tax returns. Rather the failure to file was part of a larger picture of the debtor's bad faith in using a bankruptcy case for an improper purpose.

The pre-BAPCPA case law on this issue is more extensive under Chapter 13 where

---

[6] Before addressing the bad faith grounds, it held that the debtors did not cause delay which was prejudicial to creditors nor failed to pay a filing fee or to list information required by § 521, all express grounds under § 707(a).

[7] The case was Debtors' fourth bankruptcy filing in fourteen months, the prior three cases having been filed under Chapter 13 and dismissed voluntarily (two cases) and for failure to pay the filing fee (one).

[8] Since the motion related to tax years 1993-1996, it is not clear why the lien for taxes owed in 1990-1992 is relevant.

grounds exist for dismissal for bad faith under § 1307(c)(1). Indeed in In re Goodell, 2006 WL 23568 (Bankr. E.D. Pa. Jan.4, 2006), I dismissed a Chapter 13 case pursuant to § 1307(c)(1), stating:

> In filing for bankruptcy relief, Debtor has sought this Court's protection from creditors, including the IRS. The quid pro quo for that relief is the requirement to comply with the substantive and procedural requirements of Chapter 13. Debtor had four months' notice of the requirement to file tax returns so that the IRS could make a reasoned determination of Debtor's tax liabilities in order to file its proof of claim. His obstinate refusal to do so notwithstanding the Chapter 13 trustee's directive and his motion based on a legal position that has been soundly and uniformly rejected when advanced in other bankruptcy courts smacks of bad faith and has resulted in prejudicial delay to creditors in this bankruptcy proceedings. This in itself is specific cause for dismissal under Section 1307(c)(1) of the Bankruptcy Code.

2006 WL 23568, at *4. The bad faith analysis in Goodell and the other Chapter 13 cases holding likewise conflate evidence of the debtor's willful resistance of a duty imposed by court order, local rule or case administration with the consequences of that conduct, i.e., delay that is prejudicial to creditors resulting from the trustee's inability to administer the case. See e.g., Howard v. Lexington Investments, Inc., 284 F.3d 320, 323 (1st Cir. 2002) (absent an accurate accounting of debtor's tax liabilities from filed returns, the taxing authority would not agree to any plan and further delay would only prejudice creditors and make the feasibility of any plan unlikely); Vines v. Internal Revenue Service (In re Vines), 200 B.R. 940, 944 (M.D. Fla. 1996) (affirming bankruptcy court finding that failure to file tax returns denied IRS the opportunity to file a meaningful claim, precluded the court from determining preconfirmation disputes between the IRS and debtor, and resulted in unreasonable delay for all creditors). In the Chapter 13 contest, this is most apparent

-8-

when the taxing authority's estimated claims are a barrier to confirmation and an opportunity for the non-filing debtor to evade payment.

The UST contends that the failure to file tax returns in this case has hampered the Trustee's administration of the asset Chapter 7 case. He has not been specific as to how that is so but presumably the conundrum in which the Trustee found himself in holding $65,000 in cash proceeds and being unable to conclude his administration due to the estimated nature of the tax claims is what she had in mind.[9] However, the Trustee made a choice: rather than seek dismissal (and the attendant return of the cash to the Debtor), he requested and I allowed him to make an initial distribution. Thus, creditors received a distribution notwithstanding the Debtor's recalcitrance. The distribution having been made, I am reluctant to allow the case to be dismissed without a final report by the trustee, especially since it appears that the distribution may have been incorrect as to the Musicians based on the IRS' amended proof of claim.

In refusing to allow this dismissal, I am mindful that the Debtor has been thumbing his nose at the bankruptcy system and would be granted a discharge notwithstanding his contumacious behavior. Numerous courts have stated that the benefits of bankruptcy should be earned. I agree. However, there is a statutory remedy for Debtor's conduct which had it

---

[9] Under BAPCPA, Congress has imposed a requirement that a debtor file the current tax return in a Chapter 7 case seven days prior to the § 341 hearing. 11 U.S.C. § 521(e)(2)(A). Id. Failure to do so requires dismissal absent factors beyond the debtor's control. 11 U.S.C. § 521(e)(2)(B). This new statutory requirement is intended to ensure tax compliance, one of BAPCPA's principal purposes. ABI Journal, 25-7 ABIJ 10 (September 2006).

been preserved,[10] would be available to foreclose the Debtor's discharge. Section 727(a)(6) provides that a debtor's discharge may be denied for failure to comply with any lawful order of the court. Moreover § 727(a)(3)[11] has been successfully invoked to deny the discharge where debtors failed to file tax returns. See, e.g., Lubman v. Hall (In re Hall), 174 B.R. 210, 214 (Bankr. E.D. Va. 1994) (debtors have refused to keep tax returns required by the trustee to verify schedules, find property not disclosed, and determine tax liability (including whether refunds are forthcoming), this failure to cooperate with trustee compelling denial of discharge pursuant to § 727(a)(3)). A motion to dismiss under § 707(a) is not an alternative to a complaint seeking to deny the discharge under § 727(a).

While there may appear to be some injustice to this outcome, I note the Debtor has not accomplished much by this result. His tax debt was only assessed recently and is subject to a claim under § 523(a)(1) for nondischargeability. He only had a small amount of unsecured debt. The most significant impact of this proceeding is on the Musicians who will benefit by my Order to the compel the Trustee to make a final distribution based on the amended

---

[10] I note that the more common practice of the UST where a Chapter 7 case has open questions is to seek an appropriate extension to the filing bar date.

[11] That section provides that the court shall deny a discharge if:
> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

11 U.S.C. § 727(a)(3).

tax claims. Moreover, the Musicians' proof of claim indicates it holds a judgment for its debt which has not been avoided.

For the foregoing reasons, the Motion is denied. The Trustee will complete the administration and close this estate in accordance with the UST's proscribed procedures.[12] An Order consistent with this Memorandum Opinion shall issue.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated: March 23, 2007

---

[12] To the extent the interim distribution has paid the IRS too much and the Musicians too little, the Trustee will take appropriate steps to remedy that understandable error caused by the Debtor's failure to file tax returns until recently.

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| NORMAN SPIELBERG, | : | Bankruptcy No. 04-16677DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 23rd day of March 2007, upon consideration of the Motion of the United States Trustee ("UST") to Dismiss Case Pursuant to 11 U.S.C. § 707 (the "Motion") and the Debtor's opposition thereto, after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that the Motion is **DENIED**. The Chapter 7 Trustee will complete the administration of this estate and close this Chapter 7 case in accordance with the UST's proscribed procedures.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge